1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LOUIS J. BRYANT,

11              Petitioner,                No. CIV S-05-1132 FCD CHS P

12        vs.

13   TOM L. CAREY, Warden

14              Respondent.               <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16        Petitioner, Louis J. Bryant, is a state prisoner proceeding pro se with a petition for

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner attacks his conviction for

18   forcible lewd acts on a child under age fourteen entered against him on November 26, 2002, in

19   the Sacramento County Superior Court, Case No. 02F01829.

20        Petitioner raises the following claims: (1) the trial court erred in admitting

21   propensity evidence; (2) the trial court erred in failing to grant a mistrial; (3) the trial court

22   abused its discretion during sentencing by refusing to strike petitioner's prior strike offense; (4)

23   the trial court erred in admitting evidence pertaining to petitioner's prior strike offense; (5)

24   petitioner's trial was rendered unconstitutional as a result of prosecutorial misconduct; (6)

25   petitioner's trial was rendered unconstitutional as a result of ineffective assistance of trial

26   counsel; (7) petitioner's appeal was rendered unconstitutional as a result of ineffective assistance

1

of appellate counsel; and (8) the trial court improperly imposed restitution in the amount of $3,400.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

At trial, the prosecutor began by introducing the propensity evidence. In 1981, 27-year-old Lorrie L. lived in the same building as defendant, his wife and child. Lorrie had babysat for defendant and his wife on one or two occasions. One night she returned home from work and defendant came to her apartment door pleading to talk to her. Holding her child in her arms, she claimed she was busy. He continued to plead and then shoved her inside her apartment and slammed the door shut. He told her repeatedly that there was something he needed to do. She opened the door and ordered him out. He refused to leave, slamming the door shut again. Lorrie screamed out her window. At some point, she put her screaming child behind the sofa. They fought for a long time and defendant hit her. Defendant grabbed Lorrie's hair, pulled her down a long hallway to the bedroom all the while kissing her, slammed her down on the bed, breaking the bed frame, got on top of her, pinned her arms above her head and started fondling her. She claimed she could not breathe and pleaded with him to stop. She told him that if he wanted her to "give in," he would have to allow her to breathe. He stopped, rolling slightly off. She grabbed a serrated knife off the dresser and swung it at him. He rolled completely off her and she ran out the door. She called the police immediately. On cross-examination, Lorrie claimed she suffered bruising as a result of the incident.

The prosecutor introduced the following evidence to prove the current charges. In early 1995, Tara W., her mother and her siblings lived with defendant in his apartment for about three months. Defendant and Tara's mother slept together in his bedroom. The children slept in the living room. After they moved out of defendant's apartment leaving him behind, Tara and her family kept in contact with defendant. Tara considered defendant a "close friend to the family" and "like a family member." She often spent the night at defendant's apartment and slept in the living room.

At 10:00 a.m. on February 18, 2001, 13-year-old Tara went to defendant's apartment to clean it to earn money to buy her brother a birthday present. She often cleaned defendant's apartment. When she arrived, she watched television in the living room for a while and then used defendant's computer. A "dirty movie" popped up on

---

[1] The following summary is taken from the April 19, 2004 opinion by the California Court of Appeal for the Third Appellate District (hereinafter "Opinion"), at pgs. 2-8, lodged in this court on November 28, 2007.

the computer screen and she deleted it. She told defendant, who then got on the computer and had her sit on his lap. He showed her a movie of Pamela Anderson and her boyfriend engaging in sex and asked Tara if she was "getting wet." Tara did not know what that meant at the time. Tara left with a friend and went to the mall to spend $20 defendant had given her for cleaning she had not yet done at his apartment that day. She returned to defendant's apartment. They went to the grocery store where defendant bought her a balloon and birthday card for her brother and a teddy bear for her. They returned to his apartment and she cleaned the kitchen. They ate dinner together and Tara then went into defendant's bedroom to watch a movie. Defendant got on the bed with her, rolled on top of her, held her arms above her head using one hand, and with the other hand pulled her shirt and bra down. She struggled to escape but could not because he was too strong. Defendant put his mouth on her breast. She threatened to tell her mother. After several such threats, defendant released her. They went into the living room and Tara called her boyfriend. Defendant told her he would not hurt her, that she was a strong little girl and that he had been attracted to her since she was a little girl. Defendant drove her home, giving her $15 more than he already had for cleaning, and told her not to tell her mother. Tara told her sister. Her sister told their mother, but no one called the police. Six months later, Tara reported the molestation to a counselor, who reported it to the police.

Tara was unable to recall the name of the friend who accompanied her to the mall even though Tara had known her for a long time and had seen her since the incident. When previously interviewed, Tara claimed that she bought her brother a balloon and birthday card, that she did not know what happened to the extra $15, although she claimed at trial her mother took it, and that she never mentioned anything about a Pamela Anderson movie on the computer. Tara told an officer that defendant gave her $20 for cleaning and then she went in his room to watch a movie.

In his defense, defendant testified. Defendant has owned a computer repair business since 1996. In early 1995, Tara W., her three younger siblings and her mother moved into defendant's apartment. They stayed for three months. Defendant and Tara's mother had an intimate relationship. After Tara and her family moved out, defendant maintained contact with them. Defendant had Tara, as well as others, clean his apartment.

On Wednesday, February 14, 2001, defendant asked Tara's little sister if she wanted to clean his house but she thought $10 was not enough money for the work she had done the previous week. Tara agreed to clean the kitchen and do the dishes.

Disputing Tara's recollection of the date, defendant testified that he picked her up on Friday, February 16, 2001, between 2:15 and 2:30 p.m. and went to his apartment. She immediately went to the kitchen to wash dishes and he went to his bedroom to lie down.

3

Defendant heard Tara washing the dishes. After she finished, he heard a weird noise coming from his computer. He got up, went into the living room, and saw Tara sitting at the computer. He asked her "what the hell [she was] doing" and made her get up. Defendant handed her $5. He noticed several icons at the bottom of the screen and a warning of low memory availability.

Defendant began to shut down the program and an X-rated movie popped up on the screen. Defendant said to Tara, "you nasty so and so, I'm going to tell your mama." The computer froze. He shut the computer off but when he tried to restart it, it did not restart. Defendant was mad because he had spent a week working on the computer.

Tara sat on the couch. Defendant returned to his room to lie down again. He denied showing Tara any Pamela Anderson videos.

Tara went into defendant's bedroom and lay down across the foot of the bed in front of the television. Defendant kicked her onto the floor. She got up and tried to get back on the bed, but he kicked her off every time she tried. Tara "turned around backward[,] jumped up in the air and landed across [his] legs." He lifted her across the bed, pulled her legs and she fell down, hitting the floor. She was apparently hurt. He rolled over onto his stomach and asked if she was okay. Tara "snarled up her nose, got up, left the room," returned to the living room, and sat on the couch.

Defendant went into the living room, sat by the side of the couch, said he was sorry, and that he would not hurt her. When he asked her if she wanted to go home, she said yes.

Defendant drove her home. He gave her $15. She had been at his apartment for two and a half to three hours. They never went to the grocery store or had dinner together. He denied licking her breast or pulling her top down.

On cross-examination, the prosecutor asked defendant about his statement to Detective Roberson that he had wrestled with Tara in fun before she cleaned. Defendant did not deny he said it but denied that was how it had happened. Defendant claimed he told Detective Roberson "[s]ome truth, some crap" because defendant knew better than to say anything to the police. He denied that Tara went to the mall that day. He admitted having previously been convicted by a jury of assault with intent to commit the rape of Lorrie L. Defendant admitted breaking up with his girlfriend or wife the day he went to Lorrie's apartment uninvited. He denied all the following: showing Tara a movie clip on his computer, rolling on top of her, pinning her hands above her head, pulling down her shirt, licking her breast, telling her she was a beautiful young woman, giving her extra money, and telling her not to report the incident to her mother.

Defendant also called a witness to testify about his good character. Eric Johnson had done business with defendant for about eight years and opined that defendant was an honest and caring person.

4

On cross-examination, the prosecutor asked whether Johnson's opinion would be the same if he knew about a 1981 conviction for *attempted rape* [rather than assault with intent to commit rape]. Johnson stated that he did not know about the conviction but defendant had explained "about something that happened to him a long time ago with a lady on a date in some consent [ *sic* ], but [Johnson] [did not] know the whole details." Johnson believed that defendant had tried to rehabilitate himself.

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

1   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

2   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3          The court looks to the last reasoned state court decision as the basis for the state

4   court judgment.[2]  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

5   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

6   federal habeas court independently reviews the record to determine whether habeas corpus relief

7   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

8   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

9   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

10  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

11  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

12  1167 (9th Cir. 2002).

13  II.  Petitioner's Claims

14          A.      The Trial Court Erred in Admitting Propensity Evidence

15          Petitioner's first claim is that the admission of propensity evidence pursuant to

16  California Evidence Code § 1108 concerning petitioner's prior bad act of sexual misconduct was

17  irrelevant, inflammatory and violated the Fifth and Fourteenth Amendments.[3]  Specifically,

18  petitioner claims that the 1981 crime and the underlying offense were dissimilar in that "[t]he

19  charged offenses involve alleged brief lewd conduct perpetrated upon an adolescent girl.  In

20  _____

21          [2] While the April 27, 2006 opinion of the Sacramento County Superior Court is more
    recent than the April 19, 2004 unpublished opinion of the California Court of Appeal, the Court
22  of Appeal opinion provides a more detailed analysis of most of petitioner's claims.  Both
    opinions will therefore be referenced.

23          [3] California Evidence Code § 1108 "creates an exception to the general ban on propensity
24  evidence, so that evidence of prior sexual misconduct may be presented to the jury to
    demonstrate propensity to commit the crime charged, provided that the prejudicial value of that
25  evidence does not substantially outweigh its probative value."  Schroeder v. Tilton, 493 F.3d
    1083, 1087 (9th Cir. 2007).  Pursuant to § 1108, the trial court allowed Lorrie L. to testify
26  concerning petitioner's perpetration of the 1981 assault with intent to commit rape described
    above.

contrast, the uncharged offense amounts to allegations of a violent attempted rape of an adult woman." Second Amended Petition at 4.

The California Court of Appeal rejected petitioner's claim, reasoning that:

> In <u>People v. Harris</u>, <u>supra</u>, 60 Cal.App.4th 727, this court determined that a trial court should consider a series of factors in determining whether to admit evidence under section 1108:(1) the inflammatory nature of the evidence; (2) the probability of confusion; (3) remoteness; (4) consumption of time; and (5) the probative value of the evidence. (<u>Id</u>. at pp. 737-741.) We consider these factors in seriatim.

**A.** *Inflammatory Nature of the Evidence*

> In <u>People v. Harris</u>, <u>supra</u>, the defendant, a mental health nurse, was charged with several sex offenses involving two female patients who were vulnerable based on their mental health problems. (60 Cal.App.4th at pp. 730-732.) The defendant's prior criminal behavior involved a brutal attack on a female tenant in an apartment complex where the defendant was the assistant manager. (60 Cal.App.4th at p. 733.) The defendant "beat [the tenant] unconscious and used a sharp instrument to rip through the muscles from her vagina to her rectum, then stabbed her in the chest with an ice pick, leaving a portion of the pick inside her." (<u>Ibid</u>.) The jury was told the defendant was convicted of burglary and infliction of great bodily injury. (60 Cal.App.4th at p. 738.) The charged crimes were "significantly different [in] nature and quality than the violent and perverse attack on a stranger that was described to the jury." (<u>Ibid</u>.) This court concluded that the inflammatory nature of the evidence of the prior criminal assault weighed "sharply in favor of exclusion." (<u>Ibid</u>.)

> Here, the evidence of defendant's prior sexual assault is not more inflammatory than the current offense. Thirteen-year-old Tara testified that defendant rolled on top of her, held her arms above her head using one hand, pulled her shirt and bra down and put his mouth on her breast. When she repeatedly threatened to tell her mother, defendant released her. In 1981, 27-year-old Lorrie L. had known defendant, having babysat his child. One evening, he pleaded his way into her apartment, slammed the door shut, grabbed her hair as she screamed out a window, dragged her into the bedroom, hit her, slammed her onto the bed, breaking the bed, rolled on top of her, held her arms above her head using one hand and started fondling her with the other hand. She repeatedly pleaded with him to get off because she could not breathe. Finally, when she said she would "give in" if he let her breathe, he started to roll off of her, which allowed her an opportunity to grab a knife off the dresser and swing it at him. He retreated and she was able to escape.

The evidence of the prior assault with intent to rape Lorrie L. did not involve substantially more violence than the forcible lewd conduct with Tara. Thus, this factor could weigh in favor of admission.

**b. *Probability of Confusion***

In People v. Harris, supra, this court held that the admission of the prior criminal behavior increased the probability of confusing the jury and could result in the jury convicting the defendant for the prior assault. (60 Cal.App.4th at pp. 738-739.) The prosecution presented to the jury an altered version of the facts along with a stipulation that the defendant was convicted of first degree burglary with the infliction of great bodily injury. (60 Cal.App.4th at pp. 734-735.) This court determined the jury would have concluded that the defendant "escaped appropriate rape charges and was *merely* convicted of burglary, leaving the rape victim unrevenged." (60 Cal.App.4th at p. 738.)

Here, the sexual assault upon Lorrie L. occurred in 1981 and the forcible lewd conduct upon Tara W. occurred recently. The parties stipulated that defendant was convicted of assault with intent to commit rape, although they failed to mention that he had been sentenced to prison. Moreover, the trial court properly instructed the jury on the relevance of Lorrie L.'s testimony. (CALJIC Nos. 2.50.01 [evidence of other sexual offenses], 9.00 [assault defined], 10.00 [rape-spouse and non-spouse-force or threats], 9.09 [assault with intent to commit certain felonies], 2.50.1 [evidence of other crimes by the defendant proved by a preponderance of the evidence], 2.50.2 [definition of preponderance of the evidence].) The prior act evidence was unlikely to confuse the issue for the jurors; thus, this factor could weigh in favor of admission.

**c. *Remoteness***

In People v. Harris supra, this court held that, in determining whether an incident's remoteness weighs against admissibility, a court must consider whether the defendant led a life in the interim free of relevant sexual misconduct. (60 Cal.App .4th at p. 739.) In Harris, the prior act was committed 23 years before the charged acts and the defendant was paroled 17 years before the charged acts occurred. (60 Cal.App.4th at pp. 731, 739.) People v. Harris determined that "[a]lthough there is no bright-line rule, 23 years is a long time" and "[t]he remoteness of the evidence weigh[ed] strongly in favor of exclusion." (60 Cal .App.4th at p. 739.)

Here, there was a difference of 20 years between the commission of the prior sexual assault and the charged forcible lewd or lascivious conduct. There was no evidence to suggest defendant had engaged in relevant sexual misconduct from 1981 until the instant offense was committed. The remoteness of the prior offense weighed in favor of exclusion.

#### d. *Consumption of Time*

In People v. Harris, supra, this court noted that the challenged evidence occupied only 25 pages of transcript, but required "lengthy instructions and admonitions and occupied a good portion of the closing arguments." Even so, the court concluded this factor could weigh in favor of admission "but not strongly so." (60 Cal.App.4th at p. 739.)

Here, the testimony of Lorrie L. consumed 25 pages of transcript. However, there were lengthy hearings on the admissibility of the evidence. Further, there were numerous instructions on the relevance of the prior offense evidence. Under the People v. Harris standard, the trial court could find the time required for the evidence of the prior offense was not so lengthy as to mandate exclusion of that testimony. (People v. Harris, supra, 60 Cal.App.4th at p. 739.)

#### e. *Probative Value*

In determining probative value, the trial court in People v. Harris properly considered "the degree of similarity of the prior and current offenses, as similarity would tend to bolster the probative force of the evidence." (60 Cal.App.4th at p. 740.) This court disagreed with the trial court's assessment of similarity, finding that the prior conduct evidence was "totally dissimilar to the current allegations" because the only facts the trial court found similar were that all three women were Caucasian and in their 20's or 30's. (Ibid.) Because there was no significant similarity between the prior sex crimes and the charged sex crimes, this court concluded probative value weighed "strongly in favor of excluding" the prior sex crimes evidence. (Id. at p. 741.)

Here, the trial court determined that there was significant similarity between the prior assault upon Lorrie L. and the current forcible lewd and lascivious conduct in that defendant pinned both victims on a bed by holding their hands above their heads which had some "uniqueness value." The trial court ultimately also concluded that the offenses were possibly, but not conclusively, similar in that the attack ended in the face of oral protests. We agree that Lorrie L.'s testimony is substantially similar to provide probative value. We find no abuse of discretion. Because the evidence was properly admitted, there was no basis for a mistrial.

Opinion at 14-19.

The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes."

1   Garceau v. Woodford, 275 F. 3d 769, 774 (9th Cir. 2001), overruled on other grounds by

2   Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open

3   this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue,

4   we express no opinion on whether a state law would violate the Due Process Clause if it

5   permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.")

6          Accordingly, it is not clearly established federal law that the admission of

7   propensity evidence is a violation of petitioner's rights.  Petitioner has therefore failed to

8   demonstrate that the California Courts' rejection of his federal claim was contrary to or an

9   unreasonable application of "clearly established Federal law, as determined by the Supreme

10  Court of the United States."  28 U.S.C. § 2254(d)(1).  See Alberni v. McDaniel, 458 F.3d 860,

11  863-67 (9th Cir. 2006) (denying the petitioner's claim that the introduction of propensity

12  evidence violated his due process rights under the Fourteenth Amendment because "the right

13  [petitioner] asserts has not been clearly established by the Supreme Court, as required by

14  AEDPA"); Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not

15  warranted unless due process violation was "clearly established" under federal law as determined

16  by the Supreme Court); Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001) (same).

17  Accordingly, petitioner is not entitled to relief on this claim.

18          B.    The Trial Court Erred in Failing to Grant a Mistrial.

19          Petitioner claims that the trial court erred in failing to grant a mistrial.

20  Specifically, petitioner claims that the testimony of Lorrie L. contained a "volunteered

21  statement" which distorted the jury's fact finding mission and therefore required a mistrial.

22  Second Amended Petition at 5.

23          During her testimony, Lorrie L. testified to facts not previously disclosed.

24  Specifically, she testified that she and petitioner engaged in a prolonged struggle, that petitioner

25  struck her, that petitioner pinned her arms above her head, that she agreed to "give in" if

26  petitioner let her breathe, that petitioner partially released her and that she used a knife to make

10

her escape. Id. at 8. After Lorrie's direct testimony, defense counsel approached the bench and the jury was excused. Id. at 11. After the discussion, the trial judge decided he would revisit the ruling admitting the propensity evidence after Lorrie concluded her testimony, in light of the differences between the prosecution's offer of proof and the actual testimony. Id. After Lorrie finished testifying, the trial court concluded that the propensity evidence was properly admitted even in light of the differences between the offer of proof and Lorrie's testimony. Id. at 11-12.

Petitioner claims that:

> the trial court recognized the prior victim form (sic) over 20 years ago volunteered statement was prejudicial to petitioner's case and that, if this evidence was erroneously admitted, it would have been incurable by an admonition or instruction and a mistrial would be required.

Second Amended Petition at 5.

In evaluating petitioner's claim, the California Court of Appeal concluded that:

> Here, the trial court determined that there was significant similarity between the prior assault upon Lorrie L. and the current forcible lewd and lascivious conduct in that defendant pinned both victims on a bed by holding their hands above their heads which had some "uniqueness value." The trial court ultimately also concluded that the offenses were possibly, but not conclusively, similar in that the attack ended in the face of oral protests. We agree that Lorrie L.'s testimony is substantially similar to provide probative value. We find no abuse of discretion. Because the evidence was properly admitted, there was no basis for a mistrial.

Opinion at 19.

The conclusion of the California Court of Appeal is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As noted above, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes."

1    Garceau, 275 F. 3d at 774.  Accordingly, petitioner is not entitled to relief on this claim.

2         C.    The Trial Court Abused Its Discretion in Refusing to Strike Petitioner's Prior
               Strike For Purposes of Sentencing.
3

4         Petitioner claims that the trial court abused its discretion by refusing to dismiss, or

5    "strike," petitioner's prior conviction for the 1981 assault with intent to commit rape when

6    determining petitioner's sentence.  Specifically, petitioner claims that he falls outside of the

7    spirit of the three strikes sentencing scheme because the underlying conviction was "not as

8    serious as it could have been."  Second Amended Petition at 6.

9         This claim essentially involves an interpretation of state sentencing law.  "It is not

10   the province of a federal habeas court to reexamine state court determinations on state law

11   questions."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  The standard of review for a federal

12   habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or

13   treaties of the United States (citations omitted)."  Id.  So long as a state sentence "is not based on

14   any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated,

15   or enhanced by indigency, the penalties for violation of state statutes are matters of state

16   concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a

17   showing of fundamental unfairness, a state court's misapplication of its own sentencing laws

18   does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

19   The Ninth Circuit has specifically refused to consider state law errors in the application of state

20   sentencing law.  See, e.g., Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002), vacated on

21   other grounds, Mayle v. Brown, 538 U.S. 901 (2003) (Romero claim "is not cognizable on

22   federal habeas review").

23        The trial court's decision not to strike petitioner's prior serious felony conviction

24   was not fundamentally unfair and did not result in a due process violation under the

25   circumstances of this case.  The sentencing judge understood his discretion to strike the priors

26   pursuant to Romero but declined to do so after reviewing petitioner's criminal record.

1   Reporter's Transcript on Appeal (RT) at 409.  The judge decided not to dismiss petitioner's prior

2   "strike" because of the seriousness of the crime, the age of the victim, and petitioner's prior

3   record.  Id.  This decision was not unreasonable.  After a careful review of the sentencing

4   proceedings, the undersigned finds no federal constitutional violation in the state trial judge's

5   exercise of his sentencing discretion.

6           Further, in rejecting petitioner's arguments, the California Court of Appeal

7   concluded that "the trial court did not abuse its discretion in refusing to strike the strike prior"

8   because petitioner "is a two-time violent sex offender and has committed other offenses since his

9   first sex offense."  Opinion at 21.  This decision with respect to the application of state

10  sentencing law is not contrary to or an unreasonable application of federal law and does not

11  justify federal habeas relief.  Accordingly, petitioner is not entitled to relief on this claim.

12  /////

13          D.      Petitioner's Trial Was Rendered Fundamentally Unfair

14          Petitioner argues that his trial was rendered unfair because the court admitted

15  inadmissible evidence.[4]  The entirety of petitioner's claim is that:

16          The court allowed inadmissible evidence to be admitted which was
            not part of the paperwork from 1981 while considering admitting
17          petitioner's "strike" prior.

18          The court asked prior victim 2 questions in one, which required a
            yes or no answer not rather that's a fair statement.  Answering yes
19          to the question asked would have made all the difference, rather
            the petitioner's prior would be added or not.

20
21          Trial court judgment during petitioner's Marsden Motion was
            unfair for the judge to consider the questioning of the first police
            officer acceptable.

22

23          [4] Respondent argues that this claim is procedurally defaulted.  A reviewing court need not
24  invariably resolve the question of procedural default prior to ruling on the merits of a claim
    where the issue of procedural default turns on difficult questions of state law.  Lambrix v.
25  Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir.
    2004).  Under the circumstances presented here, this court finds that petitioner's claim can be
26  resolved more easily by addressing it on the merits.  Accordingly, this court will assume that
    petitioner's claim is not procedurally defaulted.

1   Second Amended Petition at 7.

2          A federal writ is not available for alleged error in the interpretation or application

3   of state law.  Middleton, 768 F.2d at 1085.   Absent some federal constitutional violation, a

4   violation of state law does not provide a basis for habeas relief.  Estelle, 502 U.S. at 67-68.

5   Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

6   relief only if it renders the state proceedings so fundamentally unfair as to violate due process.

7   Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78

8   (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

9          Petitioner has merely provided vague and conclusory statements without any

10  factual or legal support.  Petitioner has not demonstrated how the actions of the trial court

11  rendered his trial fundamentally unfair.  Further, there is no evidence before this court that

12  petitioner's trial was, in any way, fundamentally unfair.  Accordingly, petitioner is not entitled to

13  relief on this claim.

14          E.      Prosecutorial Misconduct

15          Petitioner claims his trial was rendered fundamentally unfair as a result of

16  prosecutorial misconduct.  Specifically, petitioner claims that the prosecutor "engaged in

17  misconduct by referring to facts not in evidence during her final closing arguments.  Vouching

18  for alleged victim's credibility."  Second Amended Petition at 8.

19          A defendant's due process rights are violated when a prosecutor's misconduct

20  renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).

21  However, such misconduct does not, per se, violate a petitioner's constitutional rights.  Jeffries v.

22  Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v.

23  Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).   Claims of prosecutorial misconduct are

24  reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

25  [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

26  process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  See also

1   Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974);

2   Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases

3   in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice.

4   Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also

5   Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868.  Put another way, prosecutorial misconduct

6   violates due process when it has a substantial and injurious effect or influence in determining the

7   jury's verdict.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

8          As with the preceding claim, petitioner's allegations are vague and conclusory.  The

9   entirety of petitioner's claim is:

10              Prosecutor engaged in misconduct by referring to facts not
               in evidence during her final closing arguments.  Vouching for
11              alleged victim's credibility.

12              Prosecutor points out to the jury that petitioner kissed prior
               victim and there was no touching or xxxxxx fondling of her breast.
13              Shortly after the prosecutor points out to the jury "for the record
               she was kid (sic) of touching her chest."

14              Prosecutor lead the witness to extract the desired answer.

15              Cross examination of the prosecution witness unfairly
16              restricted.

17   Second Amended Petition at 8.

18          After review of the proceedings, this court cannot find any prejudice to petitioner.

19   Regardless of the actions of the prosecutor, the jury was presented with testimony from

20   petitioner's victim, Tara, as well as with testimony from a prior victim, Lorrie.  Petitioner has

21   offered only conclusory allegations and has not made any showing that any alleged prosecutorial

22   misconduct resulted in actual prejudice to petitioner or that the conduct resulted in a substantial

23   and injurious effect or influence in determining the jury's verdict.  Accordingly, petitioner is not

24   entitled to relief on this claim.

25   /////

26   /////

F.    <u>Ineffective Assistance of Trial Counsel</u>

Petitioner claims that he received ineffective assistance of trial counsel in violation of his constitutional rights.  Second Amended Petition at 9.  Specifically, petitioner claims that his trial counsel failed to investigate certain matters, failed to subpoena several witnesses, failed to adequately present evidence, and made tactical errors.[5]  <u>Id.</u>

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>Id.</u> at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance.  <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine

---

[5] Respondent argues this claim is procedurally defaulted.  Again under the circumstances presented here, this court finds that petitioner's claim can be resolved more easily by addressing it on the merits.  Accordingly, this court will assume that petitioner's claim is not procedurally defaulted.

1   confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

2   F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

3   performance was deficient before examining the prejudice suffered by the defendant as a result

4   of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

5   ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280

6   F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

7                    Defense counsel has a "duty to make reasonable investigations or to make a

8   reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at

9   691. "This includes a duty to . . . investigate and introduce into evidence records that

10   demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

11   confidence in the verdict." Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

12   Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

13   adversarial process will not function normally unless the defense team has done a proper

14   investigation." Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

15   Kimmelman, 477 U.S. at 384).  Therefore, counsel must, "at a minimum, conduct a reasonable

16   investigation enabling him to make informed decisions about how best to represent his client."

17   Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting Sanders v. Ratelle, 21 F.3d

18   1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted)).  On the other hand, where

19   an attorney has consciously decided not to conduct further investigation because of reasonable

20   tactical evaluations, his or her performance is not constitutionally deficient. See Siripongs II,

21   133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998); Hensley v. Crist, 67

22   F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus 'must be directly assessed for

23   reasonableness in all the circumstances.'" Wiggins, 539 U.S. at 533 (quoting Strickland, 466

24   U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a

25   reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74.  A reviewing court must

26   "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'" United

1  States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690).

2  Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in

3  light of the strength of the government's case.'" Bragg, 242 F.3d at 1088 (quoting Eggleston v.

4  United States, 798 F.2d 374, 376 (9th Cir. 1986)).

5      Petitioner's argument in support of this claim consists of a string of allegations,

6  which petitioner evidently believes support his contention.  Among the allegations are that

7  counsel failed to investigate, failed to subpoena several witnesses, failed to adequately present

8  evidence and made a tactical error.  Petitioner has failed to demonstrate prejudice with respect to

9  his claims of ineffective assistance of counsel.  Although he faults his trial counsel for failing to

10 investigate, failing to subpoena several witnesses, failing to adequately present evidence and

11 making a "tactical error," petitioner does not describe what the result of this investigation would

12 have been, how those witnesses would have testified, what evidence petitioner's counsel should

13 have presented or precisely what tactical error his counsel made.

14     At most, petitioner appears to be arguing that if counsel conducted more

15 investigation or subpoenaed certain persons, he may possibly have turned up helpful evidence.

16 Any such contention is insufficient to establish prejudice.  See Dows v. Wood, 211 F.3d 480,

17 486 (9th Cir. 2000) (to establish that counsel was ineffective for failing to produce a witness at

18 trial, a habeas petitioner must provide "evidence that this witness would have provided helpful

19 testimony for the defense," such as an affidavit from the alleged witness); Villafuerte v. Stewart,

20 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim denied where he

21 presented no evidence concerning what counsel would have found had he investigated further, or

22 what lengthier preparation would have accomplished); United States v. Berry, 814 F.2d 1406,

23 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because

24 he offered no indication of what potential witnesses would have testified to or how their

25 testimony might have changed the outcome of the hearing).   Thus, the state court opinion in this

26 regard is not an unreasonable application of Strickland and should not be set aside.  Accordingly,

1   petitioner is not entitled to relief on his claims of ineffective assistance of trial court counsel.

2        G.    Ineffective Assistance of Appellate Counsel

3           Petitioner claims that he received ineffective assistance of appellate counsel in

4   violation of the constitution.[6]  Second Amended Petition at 10.  Specifically, petitioner claims

5   that his appellate counsel failed to address issues concerning petitioner's Marsden Motions at

6   trial, failed to address the insufficient evidence sustaining his conviction, and failed to address

7   outbursts made by Lorrie L. while testifying.[7]  Id.

8           The Strickland standards apply to appellate counsel as well as trial counsel.

9   Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.

10  1989).  However, an indigent defendant "does not have a constitutional right to compel

11  appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

12  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

13  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

14  ability of counsel to present the client's case in accord with counsel's professional evaluation

15  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

16  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

17  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

18  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

19  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

20  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

21  context, petitioner must show that, but for appellate counsel's errors, he probably would have

22  ────────────────

23        [6] Respondent argues this claim is also procedurally defaulted.  Again under the
    circumstances presented here, this court finds that petitioner's claim can be resolved more easily
24  by addressing it on the merits.  Accordingly, this court will assume that petitioner's claim is not
    procedurally defaulted.

25        [7] In People v. Marsden, 2 Cal. 3d 118 (1970), the California Supreme Court held that a
26  trial court must permit a defendant seeking a substitution of counsel after the commencement of
    the prosecution's case to specify the reasons for his request.

1  prevailed on appeal.  Id. at 1434 n.9.

2        The Sacramento County Superior Court addressed this claim in their April 27,

3  2006 opinion, finding that petitioner did not "set forth what legal arguments appellate counsel

4  could have made that would have been reasonably likely to have been successful on appeal."

5  Lodged Doc. 8 at 4.  For this same reason, this court finds that Petitioner has failed to

6  demonstrate that "but for appellate counsel's errors, he would have prevailed on appeal."

7        Appellate counsel's decision to press only issues on appeal that he believed, in his

8  professional judgment, had more merit than the claims now suggested by petitioner was "within

9  the range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397

10  U.S. 759, 771 (1970).  There is no evidence in the record that appellate counsel's investigation

11  was incomplete, that a more thorough investigation would have revealed additional meritorious

12  issues on appeal, or that appellate counsel's decision not to raise the issues suggested by

13  petitioner fell below an objective standard of reasonableness.  The state court determination with

14  regard to petitioner's claim of ineffective assistance of appellate counsel was not contrary to, or

15  an unreasonable application of Strickland.  Accordingly, petitioner is not entitled to habeas relief

16  as to this claim.

17        H.    Improper Imposition of Restitution

18        Petitioner claims that the trial court improperly imposed a $3,400 restitution

19  order, although petitioner cites no corresponding constitutional violation.  Second Amended

20  Petition at 11.  Petitioner argues that the trial court ignored petitioner's inability to pay

21  restitution because "it is absolutely impossible for a prisoner to pay the fine out of his wages."

22  Id.

23        When previously faced with similar arguments, in 28 U.S.C. § 2255 matters,

24  federal courts have consistently held a federal inmate cannot challenge a restitution order

25  because the order does not affect the duration of the inmate's custody.  See, e.g., United States v.

26  Thiele, 314 F.3d 399, 400 (9th Cir. 2002) ("Claims for other types of relief, such as relief from a

1  restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains

2  cognizable claims for release from custody."), <u>cert</u>. <u>denied</u>, 540 U.S. 839 (2003); <u>United States v.</u>

3  <u>Kramer</u>, 195 F.3d 1129, 1130 (9th Cir. 1999) ("[B]y its plain terms, § 2255 is available only to

4  defendants who are in custody and claiming the right to be released.").

5           By reasonable analogy, this claim by petitioner is not a cognizable federal habeas

6  corpus claim.

7                              CONCLUSION

8           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

9  a writ of habeas corpus be denied.

10          These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within ten days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: November 6, 2008

19                              CHARLENE H. SORRENTINO
                                UNITED STATES DISTRICT COURT

21